Howry, J.,
delivered the opinion of the court:
The liability of the United States under the act. providing for the ascertainment of claims of American citizens for spo-liations approved January 20, 1885 (23 Stat. L., 283), is, according to the allegations of the petition, made to depend upon the acts of the French upon two different occasions.
There were two captures. The first resulted in a release and a second in a condemnation.
The findings show that the brigantine sailed on a commercial voyage from Wiscasset, Me., bound for St. Bartholomew. She arrived at her destination, and after discharging her cargo again set sail and was captured on that very day and carried into the island of St. Martin. Her papers were taken to Guadaloupe, where the vessel was proceeded against before the French tribunal of commerce and prizes. The prize court, acting upon information that the ship’s sea letter, clearance, and all papei’s attached were in perfect order, decreed a release. While in the custody of the French some rigging *38 and other ai'ticles were taken out of the vessel. The amount of property taken and the damages for the detention are disclosed by the findings.
The claim for compensation, from the circumstances following this first capture, presents questions which have been partly considered and determined and partly not.
Pending judicial proceedings, it was the duty of the officers and crew of the privateer to preserve without diminution or destruction the property seized, so that in case of a decree in favor of the American owners the vessel might be restored with no other damage than the delay. (The Schooner Nancy, 37 C. Cls. R.., 401.) During the time the vessel was in the hands of the prize court after control had passed out of the privateer it was the duty of the substituted French authority to permit no damage, so that, if cause did not exist for condemnation, to make restitution without the spoliation of anj1-thing either to the vessel or to the cargo on board. This was not done, and compensation must follow for the property shown to have been injured.
In the matter of remuneration for detention after the capture international law does not measure liability for the acts of the French. The treaty of 1778 was then in force. Article 23 of that treaty (Pub. Treaties, ed. 1873) contains the stipulation that “Free ships shall also give a freedom to goods * * * contraband goods being always excepted.” When the searching vessel ascertained the correctness of the papers of the brigantine by an examination and learned the innocence of the cargo by actual search, the right of deten tion came to an end and the vessel was free to pursue her voyage. The time taken for the prize court to determine that which the officers and crew had alreadj” found correct was an unjustifiable delajr for which the merchantman is entitled to remuneration.
The condemnation after the second capture was illegal and resulted in the loss shown by the findings. But the court can not regard the owners of the vessel as being the owners of the cargo in the face of the invoice, which shows the cargo to have belonged to a person not before the court claiming its value.
*39 The acts of the captors after the first capture being unwarranted, the owners of the vessel had a valid claim for indemnity upon the French Government prior to the ratification of the treaty of September 30, 1800. The owners are also entitled to recover the value of the vessel and freight earnings under the same rule.
The findings of fact and conclusions of law, together with a copy of this opinion, will be reported to Congress.